UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GEORGE ROWE,

                         Plaintiff,

           -v-                                          1:17-CV-1390

N.Y.S. DEPT. OF TAX & FINANCE,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                   OF COUNSEL:

GEORGE ROWE
Plaintiff, Pro Se
P.O. Box 12811
Albany, NY 12212

HON. BARBARA D. UNDERWOOD         MELISSA A. LATINO, ESQ.
Attorney General for the                      Ass't Attorney General
   State of New York
Attorneys for Defendant
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

     On December 28, 2017, pro se plaintiff George Rowe ("Rowe" or "plaintiff") filed this

civil rights action against his employer, defendant New York State Department of Taxation

and Finance ("NYSTF" or "defendant"). According to plaintiff's four-page form complaint and

144 pages of attached exhibits, defendant discriminated and retaliated against him in

violation of Title VII of the Civil Rights Act of 1964 ("Title VII") when it failed to promote him on several different occasions.[1]

On February 7, 2018, NYSTF moved to dismiss Rowe's complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). The motion is fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND[2]

In March of 1991, NYSTF hired Rowe, an African-American male, as a Grade 11 Tax Compliance Representative. Compl. at 22.[3] Plaintiff was promoted to Tax Technician Trainee in June of 1993. Id. Around this time, he observed "what appeared to be an [*sic*] Hispanic woman being loudly yelled at by a supervisor." Id. This made him "question[ ] if [he] had made a good decision moving [to Albany]." Id.

During his two-year traineeship from 1993 to 1995, supervisor Herman Smith ("Smith") made Rowe feel unwelcome. Compl. at 22. One day, Smith "stormed past" plaintiff and struck him in the jaw with his left shoulder. Id. Plaintiff gave Earl Willis ("Willis"), a manager, a "dated written complaint" about the incident but chose not to "go to Personnel" about it. Id.

---

[1] Plaintiff's form complaint is the one ordinarily used for filing a 42 U.S.C. § 1983 action in this District. As defendant correctly argues in its opening brief, any § 1983 claims would almost certainly be barred by state sovereign immunity. However, plaintiff invokes Title VII's employment discrimination protections and explains in his opposition memorandum that he did not intend to assert § 1983-based claims. Accordingly, consideration of defendant's arguments on these points is unnecessary.

[2] The following facts are taken from Rowe's complaint, attached exhibits, and his opposition submission and are assumed true for purposes of resolving the motion to dismiss. See, e.g., Drake v. Delta Air Lines, Inc., 147 F.3d 169, 170 n.1 (2d Cir. 1998) (per curiam) (approving district court's decision to deem pro se plaintiff's complaint to include additional facts submitted in opposition to motion to dismiss); Crum v. Dodrill, 562 F. Supp. 2d 366, 374 n.13 (N.D.N.Y. 2008) (treating pro se plaintiff's additional submissions in opposition to a motion to dismiss as effectively amending the allegations in his complaint).

[3] Pagination corresponds with CM/ECF.

At some point in early April of 1996, Rowe ran into Smith and Ira Hoke ("Hoke"), another of his co-workers, in the bathroom. Compl. at 22. According to plaintiff, Smith made a comment to Hoke that "appeared racial in nature" and that caused plaintiff "to become concerned." Id. Plaintiff walked out of the bathroom. Id.

On December 30, 1996, NYSTF moved Rowe to the Registration Bond Unit as part of an internal reorganization, and he was supervised there by Lois Defreest ("Defreest"). Compl. at 22. At some point thereafter, plaintiff filed a "non-contact grievance" because he requested, but did not receive, a Performance Program that explained his specific duties. Id. Plaintiff spent the next two years with the Registration Bond Unit. Id. According to plaintiff, at some point Defreest asked her daughter's fiancé, a police officer, to run a background check on him. Id.

On February 28, 1997, Rowe passed the Tax Auditor Trainee exam with a "100 score." Compl. at 22. Plaintiff interviewed for a promotion at multiple locations and ultimately received an offer from NYSTF's Brooklyn office. Id. at 22-23. However, plaintiff filed a discrimination complaint against the Brooklyn representatives because he believed "management had inappropriately rushed the interview process." Id. at 23. Plaintiff pursued this grievance for the next eighteen months. Id.

On July 25, 2002, Rowe scored "#3 on the Excise Tax Technician I exam and was passed over for promotion for no good reason." Compl. at 23. According to plaintiff, he "was viewed as an anomaly in the data and targeted to be passed over rather than rewarded for the mountains of work [he] did to achieve high scores." Id.

On July 7, 2003, Harry Powers ("Powers"), a supervisor, became "very irritated and exhibited a hostile act some might classify as violence." Compl. at 23. According to Rowe,

- 3 -

Powers "violently snatched" papers from his hands and stormed away. Id. at 23-24. Just over a week later, Powers injured plaintiff "when he tried to snatch a pen out of [his] hand." Id. at 24. Plaintiff sought medical attention for the injury. Id.

After this incident, Rowe "filed reports," but "certain management" told him that he was not the victim of violence. Compl. at 30. Instead, these unidentified members of management indicated plaintiff had actually injured himself. Id. Thereafter, these management members brought "false charges" against plaintiff accusing him of filing a false medical report. Id. at 57. According to plaintiff, "Labor Relations" used these false charges to attempt to terminate him. Id. However, after "maybe a year or so," an administrative law judge rejected the charges against plaintiff, awarded him most of his back pay, and moved him from the Miscellaneous Tax department to the Income Tax department. Id.

In 2005 and 2006, Rowe was not promoted despite scoring in the top three on a necessary exam. Compl. at 23. Plaintiff's complaint also includes rejection notices from a series of other jobs. See, e.g., Compl. at 67-69, 77, 100, 110-111. However, these notices only indicate another candidate was selected. Id. In addition, plaintiff indicates that he turned down job offers for "Auditor/Sr. Accountant" positions in 2014 because staying in his current position—Grade 14 Tax Technician I—would result in more favorable retirement benefits. Id. at 59. Thereafter, plaintiff appears to have applied for, and later been denied promotion to, a number of different positions between June 2, 2016 and May 10, 2017. See Compl. 64-121.

On May 11, 2017, Rowe filed an administrative complaint with the New York State Division of Human Resources ("DHR") alleging constant discrimination beginning as early as 1993. Compl. at 10-25. DHR forwarded plaintiff's complaint to the Equal Employment

Opportunity Commission ("EEOC") for dual filing purposes. Id. at 7. However, on July 19, 2017, plaintiff withdrew his DHR complaint. Id. at 2-27.

On September 26, 2017, the EEOC issued to Rowe a Dismissal and Notice of Rights. Compl. at 148. Plaintiff remains employed with NYSTF as a Tax Technician I. See, e.g., id. at 28.

## III. LEGAL STANDARDS

### A. Motion to Dismiss

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Ginsburg v. City of Ithaca, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Although a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief' (FED. R. CIV. P. 8(A)(2)), more than mere conclusions are required." Id. "Indeed, '[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." Id.; see also Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor." Faiaz v. Colgate Univ., 64 F. Supp. 3d 336, 344 (N.D.N.Y. 2014) (Baxter, M.J.). In making this determination, a court generally confines itself to the "facts stated on the face of the complaint, . . . documents appended to the complaint or

incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Concord Assocs., L.P. v. Entm't Props. Tr., 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

### B. Pro Se Status

The basic pleading requirements set forth above apply to pro se plaintiffs as well as plaintiffs represented by counsel, but "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012) (internal quotation marks omitted) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). In other words, "[w]here, as here, the complaint was filed pro se, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (quoting Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011)).

However, "all normal rules of pleading are not absolutely suspended" when a plaintiff is proceeding pro se. Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 214 (N.D.N.Y. 2008) (McAvoy, J.) (internal quotation marks and footnote omitted). Even a pro se plaintiff must plead sufficient factual allegations to suggest an entitlement to relief. See id. Simply put, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citations omitted).

## IV. DISCUSSION

Liberally construed, Rowe's complaint attempts to assert claims for race discrimination and retaliation covering a period from "1993 - present." According to plaintiff, he has been passed over for promotion "numerous times for no good reason." Compl. at 32. Plaintiff has since "discovered" that "minorities are underrepresented" at NYSTF, that minority employees

"face roadblocks to promotion not created for non-minority co-workers," that they "experience [a] lack of training and opportunity," and that, in "some cases, families get promoted" while "minorities don't." Compl. at 14, 32.

### A. Timeliness of Suit

As an initial matter, NYSTF argues Rowe's entire complaint must be dismissed because he failed to file it within 90 days after the EEOC issued the right-to-sue letter on September 26, 2017.

"To maintain a timely Title VII claim, a plaintiff must: (1) file a timely charge with the EEOC, (2) receive an EEOC right-to-sue letter, and (3) file an action within 90 days of receipt of that letter." Boza–Meade v. Rochester Housing Auth., 170 F. Supp. 3d 536, 549 (W.D.N.Y. 2016) (citation and internal quotation marks omitted).

"The 90-day period is strictly enforced and cannot be extended by even one day." Hughes v. Elmira Coll., 584 F. Supp. 2d 588, 589 (W.D.N.Y. 2008). Importantly, however, the law presumes "that a mailed document is received three days after its mailing." Tiberio v. Allergy Asthma Immunology of Rochester, 664 F.3d 35, 37 (2d Cir. 2011).

Rowe filed this action on December 28, 2017, 93 days after the date on which the EEOC issued plaintiff a right-to-sue notice. But plaintiff is not presumed to have received that notice until three days later, on September 29, 2017, which means his December 28, 2017 lawsuit falls within the 90-day period.[4] Accordingly, plaintiff's filing is timely.

---

[4] Indeed, plaintiff's opposition submission indicates he actually received the right-to-sue letter even later than that: September 30, 2017. Pl.'s Opp'n at 6.

**B. The 300-Day Limitation**

Next, NYSTF contends that any of Rowe's Title VII claims based on acts alleged to have occurred on or before July 15, 2016 are time-barred by Title VII's 300-day requirement.

"Title VII requires that individuals aggrieved by acts of discrimination file a charge with the [U.S. Equal Employment Opportunity Commission] within 180 or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days 'after the alleged unlawful employment practice occurred.'" Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 78-79 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e-5(e)(1)); see also Jiles v. Rochester Genesee Regional Transp. Auth., 217 F. Supp. 3d 688, 690 (W.D.N.Y. 2016) ("Because New York is a so-called dual-filing or deferral state, a plaintiff must file a charge under Title VII within 300 days of the occurrence of a discriminatory act.").

As the Supreme Court has explained, the word "practice" in the Title VII employment discrimination context refers to "a discrete act or single 'occurrence,'" meaning that "a discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" Vega, 801 F.3d at 79 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110-11 (2002)). Consequently, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Morgan, 536 U.S. at 113.

Rowe filed his discrimination complaint with the DHR on May 11, 2017, making July 15, 2016 the relevant 300-day time period for purposes of Title VII. Compl. at 10. Accordingly, plaintiff's allegations concerning (1) the April 1996 bathroom incident with Smith and Hoke; (2) the December 1996 incident with Defreest; (3) the July 2003 incident with Powers and the ensuing dispute with unnamed management personnel that ultimately terminated in plaintiff's favor; and (4) the 2005 and 2006 job rejections are untimely.

Importantly, these time-barred incidents are not saved by Title VII's "continuing violation exception." Under this exception, "if a plaintiff files a timely EEOC charge 'as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone.'" Edner v. NYCTA-MTA, 134 F. Supp. 3d 657, 663 (E.D.N.Y. 2015) (quoting Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 155-56 (2d Cir. 2012)).

Generally speaking, "[t]he continuing violation exception applies to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists, or discriminatory employment tests." Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993) (internal citations omitted), overruled on other grounds by Greathouse v. JHS Sec. Inc., 784 F.3d 105 (2d Cir. 2015).

However, this doctrine is inapplicable to "discrete acts" of discrimination, even if they are "related to acts alleged in timely filed charges." Edner, 134 F. Supp. 3d at 664 (citation omitted); see also Cabrera v. NYC, 436 F. Supp. 2d 635, 642 (S.D.N.Y. 2006) ("The Second Circuit has repeatedly ruled that 'multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.'" (citation omitted)).

Rowe contends that the events in his complaint, considered in the aggregate, tend to indicate that "minorities are underrepresented" at NYSTF that minority employees "face roadblocks to promotion not created for non-minority co-workers," that they "experience [a] lack of training and opportunity," and that, in "some cases, families get promoted" while "minorities don't." Compl. at 14, 32.

However, the otherwise-untimely incidents alleged in Rowe's complaint are clearly a series of discrete acts. Pietri v. N.Y.S. Office of Court Admin., 936 F. Supp. 2d 120, 134 (E.D.N.Y. 2013) ("Discrete acts of discrimination include termination, *failure to promote*, denial of transfer, or refusal to hire."). Plaintiff's history of disputes with several different co-workers at several different times, his disciplinary battle arising from the incident with Powers, and his rejections from certain career advancement opportunities in 2005 and 2006 do not plausibly form part of a "continuing violation" for purposes of Title VII.

### 1. Disparate Treatment

This leaves for consideration Rowe's allegations that NYSTF failed to promote him to a number of different positions between June 2, 2016 and May 10, 2017. See Compl. 64-121.

At the pleadings stage, Title VII "requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." Vega, 801 F.3d at 85.

"As to the first element, an employer discriminates against a plaintiff by taking an adverse employment action against him." Vega, 801 F.3d at 85. "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted).

"An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks omitted). "Examples of materially adverse changes including termination of employment, a demotion evidence by a decrease in wage or salary,

a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Vega, 801 F.3d at 85.

"As to the second element, an action is 'because of' a plaintiff's race, color, religion, sex, or national origin where it was a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action." Vega, 801 F.3d at 85 (citation omitted). In other words, "a plaintiff in a Title VII case need not allege 'but-for' causation." Id.

"At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Vega, 801 F.3d at 87 (citing Littlejohn v. City of N.Y., 795 F.3d 297, 310 (2d Cir. 2015)).

Rowe has sufficiently alleged one or more adverse employment actions for purposes of sustaining a Title VII discrimination claim. See, e.g., Gutierrez v. City of N.Y., 756 F. Supp. 2d 491, 502 (S.D.N.Y. 2010) (analyzing Title VII claim based on a "failure to promote"). However, neither plaintiff's form complaint nor his 144 pages of attached exhibits contain even the slightest indication that any of these rejections occurred under circumstances giving rise to a minimal inference of discriminatory intent.

At best, Rowe's attached exhibits indicate that he was denied promotion to several positions because other candidates were selected. In so doing, he does not plausibly allege that similarly situated applicants outside his protected class were treated more favorably during this process in a manner that is even minimally likely to be attributable to racially discriminatory motives. On the contrary, plaintiff repeatedly indicates it is nepotism, not

- 11 -

racism, that seems to motivate the selection of these applicants.[5]  Moultrie v. Carver Found., 669 F. App'x 25, 26 (2d Cir. 2016) (summary order) ("Due to the absence of any specific allegations in [plaintiff's] complaint giving rise to an inference of [discrimination], the complaint must be dismissed for failure to state a claim upon which relief can be granted.").  Accordingly, plaintiff's Title VII discrimination claims must be dismissed.

### 2. Retaliation

Rowe also contends that his failed bids for promotion are attributable to retaliatory animus stemming from earlier workplace disputes at NYSTF.

"[F]or a retaliation claim to survive a . . . motion to dismiss, the plaintiff must plausibly allege that:  (1) defendants discriminated—or took an adverse employment action—against him; (2) 'because' he has opposed any unlawful employment practice."  Vega, 801 F.3d at 90.

In the context of a retaliation claim, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination."  Vega, 801 F.3d at 90 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).

"This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination. . . '[T]he antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'"  Vega, 801 F.3d at 90 (quoting White, 548 U.S. at 64).

---

[5] In his opposition memorandum, plaintiff does state that a "white, much younger female coworker accepted an offer."  But as defendant points out, plaintiff has not identified the position she accepted, whether he applied for the same position, if so, whether he was qualified for that position, or even whether or not her qualifications were the same or similar.

"As for causation, a plaintiff must plausibly plead a connection between the act and his engagement in protected activity." Vega, 801 F.3d at 90. "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." Id. "Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." Id.

This claim fares no better. To be sure, "[c]ourts in the Second Circuit have taken a 'generous' view of retaliatory acts at the motion to dismiss stage." Ingrassia v. Health & Hosp. Corp., 130 F. Supp. 3d 709, 723 (E.D.N.Y. 2015). But the only protected activity Rowe has identified in his filings is his decision to report the incident with Powers in July of 2003. Plaintiff asserts that this led to a subsequent attempt by unidentified members of management to bring him up on "false charges," but that debacle ultimately resulted in an administrative law judge rejecting those charges, awarding him back pay, and relocating him to a different management unit with different supervisory personnel.

This alleged retaliatory misconduct appears to have occurred in 2004, well outside the 300-day limitations period. And even putting aside the fact Rowe was actually offered, but turned down, a subsequent promotion, the fact he was later passed over for certain advancements much later—in 2016 and 2017—presents far too attenuated a series of circumstances to establish even a minimal inference of retaliation. Cf. Cifra v. Gen. Elec. Co., 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."). According, plaintiff's Title VII retaliation claims must be dismissed.

- 13 -

## V. **CONCLUSION**

Even liberally construed in his favor, Rowe's current body of allegations fail to establish any plausible Title VII claims and therefore his complaint must be dismissed. However, plaintiff remains free to seek the protection of state and/or federal anti-discrimination laws if he has suffered from one or more adverse employment actions in the more recent past that may be attributable, at least in part, to discriminatory motivations—if appropriate, plaintiff may file a new administrative charge with the DHR and, if necessary, may even pursue a new federal lawsuit.

In light of the overall tenor of Rowe's factual allegations, as well as the fact that his roughly 140 pages of supporting exhibits do not substantiate any federal claims, it is unnecessary to permit plaintiff an opportunity to attempt to amend his complaint to cure the substantive defects identified here. See Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (explaining that it may be appropriate to deny leave to replead in cases "[w]here it appears that granting leave to amend is unlikely to be productive").

Therefore, it is

ORDERED that

Defendant's motion to dismiss is GRANTED. The Clerk of the Court is directed to terminate the pending motions, enter a judgment dismissing the complaint, and close the file.

IT IS SO ORDERED.

Dated: July 10, 2018
Utica, New York.

_____
United States District Judge